| | |
|---|---|
| 132 | 23 |
| 132 | 79 |
| 132 | 23 |
| 42a | 197 |
| 132 | 23 |
| 152 | 389 |
| 132 | 23 |
| 185 | 374 |

## John V. LeMoyne

### *v.*

## George F. Harding.

*Filed at Ottawa January 21, 1890.*

1. Administration of estates—*realty held subject to debts—rights of devisee or his grantee in the meantime.* Upon the death of a testator all his interest in lands will pass to his devisees, as directed by his will, subject only to be taken from them to pay the debts of his estate, in the mode prescribed by law. The devisees and their grantee, before a sale to pay debts, will be entitled to the possession of the lands, and to all the rents and profits accruing after the death of the testator.

2. Same — *administrator's sale of land — purchaser failing to pay.* Where the purchaser at an administrator's sale of lands fails to pay his bid and complete the sale, the administrator may tender him a deed and sue for the purchase money, or he may, perhaps, without further order from the court, re-sell, and hold the purchaser liable for any loss resulting to the estate.

3. Same—*in case of re-sale—from what time the title passes.* In 1875, land was bid off by a party at an administrator's sale, but the purchase money was not paid. In September, 1881, the court ordered a re-sale unless the bid was paid in thirty days, and there being no payment, the land was sold on March 6, 1884, to the same purchaser, and a deed made and delivered: *Held,* that the title of those succeeding to the interest of the deceased owner was not divested until on March 6, 1884, and that after the expiration of thirty days from the order of September, 1881, the bidder had no rights resulting from his former bids.

4. Taxes—*undivided interest in land—payment of taxes thereon.* One may pay the taxes on the undivided half or other part claimed by him, and let the other interest take care of itself.

5. Same—*and herein, of a subsequent sale of a part by an administrator—contribution in case of partition.* A held the title to lands, one-half in his own right, and the other half in trust for B and C, B being the beneficial owner of the undivided one-third, and C of the remaining one-sixth. A devised all his real estate to his widow and daughter, and died largely indebted. In January, 1870, his devisees conveyed their interest in the land to L, and shortly after, B and C conveyed their undivided half to L, who took possession and paid the taxes accruing on the whole tract. In 1875 the administrator of the estate of A, under an order of court, sold all the lands left by A, for the payment of his debts, and struck the same off to F, who failed to pay his bids. In Septem-

ber, 1881, the court directed the administrator to re-sell if the bids were not paid in thirty days. They were not paid, March 6, 1884, and the lands were again sold by the administrator and bought by F, who received a deed: *Held*, on bill for partition between F and L, that the payment of taxes on the land by L, up to the administrator's sale in 1884, would be presumed to have been made for his own benefit, as owner of the entire interest, and not for the benefit of F, or one who might afterwards obtain an administrator's deed for any part of it, and that F was not liable to pay half of such taxes.

6. The purchaser of land at an administrator's sale is not liable to one for taxes paid by him as the heir, or grantee of the heir, of the intestate owner, whose duty it was to pay the same.

7. Same—*tax sale—who may be a purchaser.* Where the owner of land suffers it to be sold for taxes, and buys it in at the sale, he will not thereby acquire any independent title. It will be treated as a mode of paying the taxes.

8. Costs—*in partition.* On bill for the partition of land, each party owning the undivided half, where the defendant wrongfully seeks to charge the complainant with the payment of a part of taxes paid to protect a different title and not to benefit the complainant's title, the defendant should be required to pay all the costs occasioned by the unfounded claims of taxes, but as to the ordinary costs of the partition the costs should be apportioned equally.

Writ of Error to the Circuit Court of Cook county; the Hon. Lorin C. Collins, Judge, presiding.

Messrs. Wilson & Moore, for the plaintiff in error:

Harding, by his purchase, occupied the position of co-tenant from the death of Ricketson.

Like a sheriff's sale, the deed relates back to and takes effect from the date of the judgment. *Ryhiner* v. *Frank*, 105 Ill. 326; *Miller* v. *Wilson*, 32 Md. 297; *Farrar* v. *Payne*, 73 Ill. 82.

A tenant in common has an equitable lien for all advances on the interest of the other owners or assigns receiving the benefit. *Titsworth* v. *Stout*, 49 Ill. 78; *Wilton* v. *Tagwell*, 86 id. 29; *Fischer* v. *Eslaman*, 68 id. 83.

After the administrator's sale, in 1875, the interest of the devisees of Ricketson, and all claiming under them, was cut off, and the purchaser was the owner.

Where a purchaser at a judicial sale declines to comply with his bid, the officer may either tender him a deed and sue him for the purchase money, or, after giving him a reasonable time to comply, make a re-sale of the land and hold him for the loss. *Jackson* v. *Warren*, 32 Ill. 342; *Comstock* v. *Purple*, 49 id. 169; *Dills* v. *Jasper*, 33 id. 272.

The purchaser's contract is completed when his bid is accepted, and from that time he is liable for the purchase money. *Gray* v. *Case*, 51 Mo. 463; *Robb* v. *Mann*, 11 Pa. St. 300; *Rock* v. *Heald*, 27 Texas, 523; *Sproull* v. *Seay*, 74 Ga. 676.

If Harding's title dates from March 6, 1884, the Stanley tax title was good. Cooley on Taxation, 345; *Cox* v. *Gibson*, 27 Pa. St. 160; *Blackwood* v. *Van Vlut*, 30 Mich. 118; *Moss* v. *Shear*, 25 Cal. 38; *Bowman* v. *Cocknell*, 67 Kan. 311; *Seaver* v. *Cobb*, 98 Ill. 200.

The decree is erroneous in awarding all costs.

Mr. William J. Ammen, for the defendant in error:

The purchase of the land through Stanley, in 1881, did not strengthen LeMoyne's title, as it was his duty to pay the taxes. *Choteau* v. *Jones*, 11 Ill. 300; *Frye* v. *Bank*, id. 376; *Irving* v. *Brownell*, id. 402; *Voris* v. *Thomas*, 12 id. 442; *Ralston* v. *Hughes*, 13 id. 469; *Barton* v. *Moss*, 32 id. 50; *McAlpine* v. *Zitzer*, 119 id. 273; 2 Desty on Taxation, chap. 27.

LeMoyne had no co-tenant. He claimed the entire estate, or, two undivided halves of the land.

Mr. Justice Wilkin delivered the opinion of the Court:

This is a proceeding in chancery, begun in the circuit court of Cook county, to the April term, 1885, by defendant in error, against plaintiff in error, one George B. Carpenter, William Scully, Dennis Doran, and certain other parties, named as trustees of the Illinois and Michigan canal. The prayer of the bill is for the partition of the south half, and that part of the north-west quarter south of the canal, of section 3, town.

38 north, range 13 east, Cook county, Illinois, between the complainant, George F. Harding, and the defendant, John V. LeMoyne, in equal parts or shares, and to set aside a certain tax deed.

On the hearing, the only controverted question was as to whether or not the complainant, Harding, was liable to pay the defendant, LeMoyne, one-half of a large amount of money alleged by him to have been paid on taxes assessed against said lands, and to discharge a lien thereon by way of tax sale and deed. On this question, the court below held with the complainant, and decreed according to the prayer of the bill, and appointed commissioners to make partition, and ordered the defendant, LeMoyne, to pay all costs, awarding execution therefor. From that decree this writ of error is prosecuted.

Two questions arise in this court for decision,—first, did the circuit court err in decreeing that Harding was entitled to one-half of said premises free from liability to LeMoyne for taxes paid by him; and second, did the circuit court err in decreeing that LeMoyne should pay all the costs.

The first of these questions arises out of the following state of facts: Prior to August 5, 1864, the title to these lands was in the canal commissioners of the Illinois and Michigan canal, who had issued certain certificates therefor, which were then held by one George C. Smith, who, at that date, conveyed the same, by deed, to Charles W. Ricketson, Ricketson, however, holding said deed, as to one-half of said lands, in trust for H. Brady Wilkins and Silas Merrick, one-third thereof for Wilkins and one-sixth for Merrick. Charles W. Ricketson died September 29, 1866, so seized of said lands, being in possession of the whole of them by his tenant, William Scully. By his last will and testament he bequeathed his property, real and personal, to Polly H., his widow, and Lizzie W., a daughter and only child. On the 22d day of January, 1870, said Polly H. and Lizzie W. conveyed all their right, title and interest in the premises in question to defendant, John V. LeMoyne. On the

20th day of May, 1870, H. Brady Wilkins and wife also conveyed to him an undivided one-third thereof, and on August 7, 1871, Silas Merrick and wife conveyed to him an undivided one-sixth thereof. Prior to June 17, 1870, Henry M. Shepard had been appointed administrator *de bonis non* of Charles W. Ricketson, deceased, by the county court of Cook county, and he then filed his petition in the circuit court of said county for an order to sell all the interest of said Ricketson in said lands, to pay debts theretofore probated and allowed against the estate of his intestate. The order was duly granted, and in August, 1875, said administrator, in pursuance thereof, offered the lands for sale, and they were struck off to said George F. Harding and one Benjamin F. Quimby, the latter, after the sale, assigning his bid to Harding. The amount bid at said sale remaining wholly unpaid, in September, 1881, the said circuit court directed said administrator to re-sell the premises unless said bids were paid within thirty days. In pursuance of this last order a re-sale was made March 6, 1884, at which said Harding purchased, in separate tracts, all of said premises, for the aggregate sum of $54,793.82, and of that date received administrator's deeds for the several tracts so purchased, conveying to him all of the interest of the said Charles W. Ricketson, deceased, therein, to the extent of one undivided one-half thereof. At the death of said Ricketson, William Scully was living on said premises under a lease from Ricketson, which, he says, expired in 1869. About that time he contracted with LeMoyne for the right to cut grass on an undivided half of the west half of said section 3, south of the canal, and from year to year thereafter, until 1884. Five or six years prior to the filing of this bill, Dennis Doran also obtained a lease from him to cut grass on the undivided half of the south-east quarter of said section, from year to year, until 1884. LeMoyne paid the taxes on the whole of the said premises from the year 1871 to the year 1873, inclusive, except the sum of $463.69 of the taxes of 1872, which Harding paid for

the purpose of protecting an interest which he had in a contract made by Ricketson in his lifetime with one Tiernan, by which the latter was to have a certain per cent of the profits in the sale of said lands. The taxes from 1874 to 1880, inclusive, remained unpaid, and in August, 1881, the premises were sold for taxes of 1880 and previous years, and bid off by one P. E. Stanley, who, on December 27, 1883, took a tax deed therefor. On March 13, 1884, he conveyed to the said George B. Carpenter. In January, 1884, LeMoyne leased half of the north-west quarter south of the canal to William Scully for one year, and from year to year thereafter, to the bringing of this suit; also, January 7, 1884, to Dennis Doran, half of said south-east quarter for one year, and from year to year thereafter, to the bringing of this suit. About the same time the said George Carpenter also leased an undivided half of the same premises to the same tenants for the same term. It is not denied by LeMoyne that all that was done by way of purchasing said lands at said tax sale, obtaining tax deed therefor, conveyance to Carpenter and his leases to Scully and Doran, was done at his (LeMoyne's) instance and for his sole benefit, nor is it now claimed by him that said tax deed vests in him any title to said premises.

Other facts appear in the record, but they are unimportant in the consideration of the question involved here.

All the interest which Charles W. Ricketson had in these lands, immediately upon his death vested in his devisees, Polly H. and Lizzie W. Ricketson, subject, only, to be taken from them to pay the debts of Charles W., in the mode prescribed by law. They were entitled to the possession thereof, and all the rents and profits accruing after that date. (*Green. v. Massie,* 13 Ill. 364; *Foltz* v. *Prouse,* 17 id. 493; *Walbridge* v. *Day et al.* 31 id. 383; *Stark et al.* v. *Brown,* 101 id. 400.) Hence, by the conveyance from these devisees to LeMoyne, he became the owner of that interest, and until his ownership was divested by a sale and conveyance, made in conformity with

our statutes, to pay Ricketson's debts, no one could question LeMoyne's title, his right to possession, and to receive all the rents and profits accruing thereon. That divestiture did not occur until March 6, 1884.

Much is said in the argument, of the conduct of Harding in failing and refusing to comply with the terms of his bids in 1875, and it is insisted that that sale cut off all claim of LeMoyne as grantee of Ricketson's devisees. It is said, the last sale was but a supplemental sale to compel a compliance with the former purchase; but this position can not be maintained. The administrator might, no doubt, have tendered a deed and sued Harding for the purchase money. He might, perhaps, without a further order from the court, have re-sold, and held Harding for any loss resulting to the estate. Here, an order was made in September, 1881, directing a re-sale unless the bids were paid in thirty days. Two and a half years after that order this sale was made. After Harding had failed to complete his purchase of 1875, LeMoyne could undoubtedly have prevented his getting a deed by paying off the debts against the estate. Certainly, after the expiration of thirty days from the order of September, 1881, Harding had no rights resulting from his former bids in 1875. He could only get the property at the second sale by giving more for it than others would bid. Had the property in the meantime advanced in value, so that less than the whole of Ricketson's interest would have paid all the debts against his estate, LeMoyne would have received the benefit. Certainly, during all the years from 1875 to 1884, LeMoyne's relation to the property was unchanged. Harding's conduct, even if inexcusable as between himself and the administrator, in no way prejudiced the rights of LeMoyne. It is not pretended that prior to his receiving his administrator's deed Harding had any sort of possession of any part of these premises, that he received any of the rents and profits thereof, nor had he, prior to that time, any more right thereto than the remotest stranger.

It will not do to assume, as is done in the argument of counsel for plaintiff in error, that LeMoyne only owned the undivided one-half of said lands to 1884, under his deeds from Wilkins and Merrick, and that he was therefore a joint owner with some one else. He owned one-half independent of the title derived from the devisees of Ricketson. It was his deed from the latter grantors which gave him the right to the part now claimed by Harding, and which, from its date to March 6, 1884, made him the owner, entitled to all the benefits of such ownership, against every one. Whether he actually took possession of all or only an undivided half, and whether he received rents from all or only half, is wholly immaterial to the determination of this question. He was entitled to both, and so far as the evidence shows, no one obstructed him in the exercise of his right thereto. Under these circumstances, if he paid the taxes, he must be held to have done so for his own benefit, and not for the benefit of one who might thereafter obtain an administrator's deed for any portion of the lands.

An attempt is made to place these parties in the relation of co-tenants from the time of Ricketson's death. It is said, an administrator's title relates back to the death of the intestate, and therefore in this case Harding and LeMoyne were cotenants from the date of such death. This, to say the least, is a novel position. If by relating back to the death, is meant that an administrator's deed gives the grantee no better right or title to the premises than the intestate had, the statement is clearly correct. It is also clear that the rule of *caveat emptor* applies to such purchases; but how these rules of law, under the facts in this case, would make these parties co-tenants, is not, and can not be, shown. Not a single element essential to the relation of co-tenancy is shown to have existed between them prior to March 6, 1884. Let the doctrine of *caveat emptor* be applied to Harding's purchase. He would doubtless have been governed in the amount of his bids by the fact as to whether or not the premises were incumbered by unpaid taxes.

Here, he found none. The tax had been paid. The lands were discharged from all liability for taxes. (*Mason* v. *City of Chicago*, 48 Ill. 420.) The tax was not only paid, but paid by the owner, who was personally liable therefor. To say that under the rule of *caveat emptor* he must now refund those taxes to the former owner, would be carrying that rule to an unheard of extent. The law presumes that LeMoyne paid the tax to protect his ownership in the whole of these lands, as we have no doubt he in fact did,—hoping to defeat the claim of any purchaser at the administrator's sale, by a tax title or otherwise. If he disclaimed ownership to the whole of the premises he could have paid the tax on the undivided half, and thus protected his interest, leaving the other undivided half to take care of itself. Rev. Stat. sec. 162, chap. 120.

It is insisted, finally, that if Harding's title is held to date from March 6, 1884, then the Stanley tax deed is good. As before said, LeMoyne claims no title by virtue of that deed. Carpenter attempted, by his answer, to set up title in himself under it, but the proof is overwhelming that he was simply acting for LeMoyne; and the latter, by his cross-bill, says expressly that he bought the certificate from Stanley, only claiming that such purchase amounted to a payment of taxes. "We have often held that when the owner lets his land be sold for taxes, and buys it in at the tax sale, he does not thereby get any independent title,—that it is but a mode of paying the taxes." (*McAlpine et al.* v. *Zitzer et al.* 119 Ill. 278.) It is too clear for argument, that if plaintiff in error could not pay the taxes directly and charge Harding therewith, he could not do so indirectly by a mere shift. On any theory of this case, the decree of the circuit court is clearly right in holding that defendant in error was not liable for the taxes claimed.

We are unable to agree with the court below as to the liability of LeMoyne for all costs. Those occasioned by his unfounded claim for taxes he should pay, but the ordinary costs

of the partition should be paid by both parties, each paying one-half.

The cause will be remanded, with directions to the circuit court to modify its decree as to costs, as here indicated. In all other respects the decree of the circuit court is affirmed.

*Decree reversed in part and in part affirmed.*